730 A.2d 588 (1999)
In re J.C. and N.C. (Adoption)
No. 98-275.
Supreme Court of Vermont.
March 12, 1999.
Maryann Zavez, Alexander W. Banks, and Linda Joyce, Russell E. Owens and James Tucker, Legal Interns, South Royalton *589 Legal Clinic, South Royalton, for appellant.
Peter M. Nowlan of Nowlan & Meyer, Randolph, for appellees.
Mark E. Furlan, Randolph, for children.
Present: AMESTOY, C.J., DOOLEY, MORSE, JOHNSON AND SKOGLUND, JJ.
AMESTOY, C.J.
Perley E. Smith, the guardian of minors N.C. and J.C., appeals from an order of the probate court denying his petition to terminate the parental rights of respondents, the minors' natural parents. Smith contends the court erred as a matter of law in: (1) concluding that the existence of Smith's guardianship constituted good cause for respondents' nonsupport of the minors; and (2) failing to consider the requisite statutory criteria in ruling that termination was not in the minors' best interests. We conclude that the appeal is not within the jurisdiction of this Court because it does not present a pure question of law capable of resolution without reliance upon the factual record. Therefore, we transfer the appeal to the superior court.
Smith is the childrens' grandfather, the father of their natural mother, M.C. In January 1993, Smith and his wife were appointed guardians of the minors with the consent of the mother and the childrens' natural father, D.C. At that time, the children were less than three and five years old. Respondents moved unsuccessfully to terminate the guardianships in November 1993 and January 1995. The Smiths filed a petition to adopt in December 1994, and subsequently filed a petition to terminate parental rights in May 1997. Smith's wife died prior to the hearing on the motion to terminate, and Smith continued to serve as guardian.
Under Vermont's Adopton Act, 15A V.S.A. §§ 3-101-3-802 (Cum.Supp.1998), grounds for the termination of a parental relationship with a minor over the age of six months exist where the court finds, upon clear and convincing evidence, that the respondent parent "did not exercise parental responsibility for a period of at least six months immediately preceding the filing of the petition," id. § 3-504(a)(2), and that termination is in the best interests of the minor. See id. § 3-504(a). In determining whether the respondent parent has exercised parental responsibility, the court must consider "all relevant factors," including the parent's failure to:
(A) make reasonable and consistent payments, in accordance with his or her financial means, for the support of the minor, although legally obligated to do so;
(B) regularly communicate or visit with the minor; or
(C) during any time the minor was not in the physical custody of the other parent, to manifest an ability and willingness to assume legal and physical custody of the minor.
Id. § 3-504(a)(2).
The Act provides further that if the respondent establishes by a preponderance of the evidence "good cause" for not exercising parental responsibility, the court may not terminate parental rights except upon a finding by clear and convincing evidence that: (1) certain additional grounds exist, e.g., that given the opportunity the parent would not have the ability and disposition to provide the child with love, affection and guidance, adequate food and clothing, or a safe environment; and (2) that termination is in the best interests of the minor. See id. § 3-504(b). The Act additionally provides that "the court shall consider the best interests of the child in accordance with" four specific criteria, including: (1) the likelihood that respondent will be able to resume parental responsibilities within a reasonable period of time; (2) the child's adjustment to his or her home, school and community; (3) the interaction of the child with parents, siblings, and others who may affect the child's *590 best interests; and (4) whether the parent has played, and continues to play, a constructive role in the child's welfare. See id. § 3-504(c).
Following an evidentiary hearing on the termination petition, the probate court found that although Smith was in failing health, the children were adequately provided for, partly as a result of the assistance Smith received from two older grandchildren who also lived with him. The court further found that respondents had no parenting skills, had not completed any parenting classes, and had maintained only sporadic contact with the children. Thus, the court concluded that Smith had shown by clear and convincing evidence that respondents had not supported the minors, and had not manifested an ability or willingness to assume custody of the children for the six months preceding the filing of the petition.
The court went on to conclude, however, that respondents had established good cause for their failure to exercise parental responsibility by virtue of the existence of the guardianship. As the court explained:
The guardianship does not require the respondents to support the boys, and it does not allow them to take back custody. Thus, the shifting burden of proof imposed by 15A VSA 3-504 ends with the respondents showing that the guardianship, still in existence, is their reason for not supporting their sons, or pressing to regain legal custody.
The court then addressed the best-interests component, observing that a termination of parental rights would not "change much of anything" other than the nature of the parties' formal relationship with the children. The children would continue to reside with Smith regardless of the outcome of the termination proceeding; hence, the court concluded that the petition was "superfluous" and denied it. Smith thereupon appealed to this Court pursuant to 12 V.S.A. § 2551, which provides for Supreme Court jurisdiction over "questions of law" arising out of the probate court. The probate court certified the following question to be determined by this Court:
Is the shifting burden of proof set out in 15A V.S.A. § 3-504 satisfied by a respondent showing that he has good cause for not complying with the subdivision (a)(2) requirement of exercising parental responsibility by reason of the fact that the children are under guardianship and not under his control, in the absence of any showing that the children's best interests would be served by terminating parental rights?
See V.R.A.P. 13(c) (in appeals from probate court to Supreme Court, record shall consist of certified copy of proceedings, setting forth questions of law to be decided by Court).

I.
In In re Estate of Johnson, 158 Vt. 557, 559, 613 A.2d 703, 704 (1992), this Court held that in direct appeals from probate court, we "review only `pure' questions of law, the resolution of which do not depend upon factual distinctions and do not require review of the record." We reached this conclusion because the superior court has "appellate jurisdiction of matters originally within the jurisdiction of the probate court," 12 V.S.A. § 2553, and sits as a higher court of probate, considering the case anew as if no prior proceeding had occurred in the probate court. See Whitton v. Scott, 120 Vt. 452, 457-58, 144 A.2d 706, 709 (1958). We stressed that the Legislature did not intend "to create a forum choice for litigants" and that we must limit the role of this Court in probate appeals to foster "the orderly, consistent administration of justice and discourage forum shopping." Johnson, 158 Vt. at 560, 613 A.2d at 705.
Here, the probate court's ruling, and the certified question to this Court, raise two issues: (1) whether respondents demonstrated good cause for not exercising parental responsibility "by reason of the fact *591 that the children are under guardianship"; and (2) whether termination was in the best interests of the children.
As to the first issue, the statute requires the probate court to consider "all relevant factors" in determining whether respondents have demonstrated good cause for not exercising parental responsibilities. 15A V.S.A. § 3-504(a)(2). Accordingly, any appeal from that determination necessarily requires a review of the factual record, and is therefore beyond this Court's jurisdiction. See Johnson, 158 Vt. at 559-60, 613 A.2d at 704. Smith has attempted, nevertheless, to frame the issue on appeal as presenting a pure question of law, noting that the probate court's written decision, and its certified question, suggest that the court did not consider the totality of the factual circumstances, but rather ruled that good cause had been established as a matter of law solely because of the existence of the guardianship.
Smith's concern is understandable. Absent a specific provision to the contrary, nothing in the certificate of appointment of a guardian abrogates a natural parent's fundamental duty to support his or her child. See In re J.B., 157 Vt. 668, 669, 603 A.2d 368, 369 (1991) (mem.) (parents have duty to provide support, when they are able, for minor children). Furthermore, nothing in the language, or the policy, of the Adoption Act supports the probate court's conclusion that the mere existence of a guardianship constitutes good cause for a parent's failure to provide support, or to manifest an ability or willingness to assume custody of the children. The "guiding principle" of the Uniform Adoption Act, the model for Vermont's Adoption Act, is "to promote the welfare of children and, particularly, to facilitate the placement of minor children who cannot be raised by their original parents with adoptive parents who can offer them stable and loving homes." Unif. Adoption Act, Prefatory Note, 9 U.L.A. 2 (Supp.1998). A finding of good cause based solely upon the existence of a guardianship would discourage the natural parents from resuming their parental responsibilities, impede the efforts of the guardian or other prospective parent from adopting, and ultimately undermine the purpose of the Act in finding the child a stable and loving home.
This Court's consideration of whether the probate court erred as Smith contends would invariably require a careful review of the record as a whole and the particular facts and circumstances of the case. As we held in Johnson, 158 Vt. at 559-60, 613 A.2d at 704, this is precisely the sort of determination more properly left to the superior court.

II.
The second issue on appeal is also clearly beyond the scope of this Court's appellate review. Smith contends the probate court failed to address the requisite statutory criteria in determining whether a termination of parental rights was in the best interests of the children. As noted, the Adoption Act provides that the probate court must consider the best interests of the child in accordance with four specific criteria. See 15A V.S.A. § 3-504(c). These factors are identical to those applicable in termination proceedings brought by the Department of Social and Rehabilitiation Services under 33 V.S.A. § 5540.
In reviewing the adequacy of findings under § 5540, we have held that while a court need not couch its findings in the precise language of § 5540, see In re G.V., 136 Vt. 499, 502, 394 A.2d 1126, 1128 (1978), the record must, nevertheless, demonstrate that the best interests of the children were considered "in accordance" with the statutory criteria. See In re M.B., 162 Vt. 229, 235, 647 A.2d 1001, 1004 (1994); see also In re C.L., 151 Vt. 480, 482-83, 563 A.2d 241, 243 (1989) (Court will uphold judgment in absence of explicit findings on enumerated statutory factors when record shows that family court considered requisite factors in terminating parental rights).
Obviously, therefore, we cannot review the adequacy of the probate court's findings concerning the children's best interests *592 without considering the evidentiary record as a whole. As we explained in Johnson, this is precisely the type of fact-specific issue reserved for the probate court in the first instance, and for the superior court on de novo review. See Johnson, 158 Vt. at 559-60, 613 A.2d at 704. Preserving the superior court's jurisdiction over the particular procedural and substantive facts of the case "avoids inconsistency and minimizes concurrent jurisdiction." Id. at 560, 613 A.2d at 705. Furthermore, our rules relax the obligation of the probate courts to engage in extensive fact-finding precisely to facilitate the expeditious movement of cases from the probate to the superior court, where it can be concluded with limited review thereafter. See V.R.P.P. 52(a) (probate court's findings and conclusions sufficient if stated orally at close of evidence). Failure to adhere to this Court's jurisdictional requirements would ultimately delay this process, and impede resolution of the underlying disputes.
Although in this case the time for filing an appeal to the superior court has expired, see V.R.C.P. 72(a), V.R.A.P. 4, we conclude that to avoid an unduly harsh result the cause should be transferred to the superior court for further consideration. See 4 V.S.A. § 2(b) (Court has "jurisdiction to issue all ... orders that may be necessary to the furtherance of justice"); In re Estate of Piche, 166 Vt. 479, 484, 697 A.2d 674, 677 (1997) (transferring cause to superior court for de novo trial); Johnson, 158 Vt. at 560, 613 A.2d at 705 (transferring cause to superior court notwithstanding expiration of time for filing appeal). Accordingly, pursuant to our supervisory authority, we order the cause transferred to the superior court for further review.
Cause transferred to superior court for further proceedings consistent with the views expressed herein.